IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MEDISON AMERICA INC., <br>   a California corporation <br><br>        Plaintiff, <br><br> v. <br><br> PREFERRED MEDICAL SYSTEMS, LLC, et al <br><br>        Defendants. | No. 05 – 2390 MV <br> **Jury Demanded** |

**PLAINTIFF'S REPLY TO MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT TO ABSTAIN FROM FURTHER EXERCISE OF JURISDICTION**

The memorandum in opposition (Dkt. Entry 104-1) filed by defendants, Preferred Medical Systems, McGuire, Reed (hereinafter **"Defendants"**) is an erudite and forceful argument that, in the abstract, appears to be dispositive. The problem is that it is dispositive of a question that is not on the table. The motion of Plaintiff is grounded in prudence and not grounded in the precepts of *Younger v. Harris,* 401 U.S. 37 (1971) (hereinafter "*Younger* Doctrine").

It is true that there is one passing reference to *Younger* in the Abstention Motion; however, *Younger* clearly is not where Plaintiff rests Plaintiff's plea for relief.

The Abstention Motion is planted squarely in an abstention for prudential grounds. Prudential abstentions pre-date *Younger* and may or may not overlap *Younger* precepts. However, the Younger Doctrine is not dispositive of the Abstention Motion. The memorandum in opposition filed by Defendants, on the other hand, only uses the word "prudential" one time (Dkt. Entry 104-1 page 7, last paragraph) in sixteen pages. There is no discussion concerning prudential grounds, and defendants cite only one case (i.e., *Sea-Land Service, Inc. v. Powertex, Inc.,* 948 F. Supp. 13 (N.D.N.Y. 1996)), and that case does not use the word prudence or refer to prudential grounds at all.

In short, the Abstention Motion (Dkt. Entry 93) and the memorandum in opposition to the abstention motion (Dkt. Entry 104-1) are much like two ships passing in the night. The memorandum

in opposition would be persuasive in a case where the issue addressed was the issue at hand; however, the issue addressed in the memorandum in opposition is not the issue at hand.

To illustrate, reference is made to this Court's ruling in *Beal/Schaeffer v. Walgreen Co.,* No. 052237-DV (W.D. Tenn. W.Div.) (hereinafter "*Beal/Schaeffer*").  In that case, the defendant filed a motion requesting this Court to abstain. In *Beal/Schaeffer*, the plaintiffs responded in opposition with a memorandum similar to that filed by Defendants in the instant case (Beal/Schaeffer, Dkt. Entry 63).  The *Beal/Schaeffer* plaintiffs relied on a similar attempt by the defendants in another case to have this Court abstain in *PromoVision, Inc., Bradley Phillips and Robin Phillips v. Keickhafer, Scott, Skinner and CIPI*, No. 03-2349 DP (W.D.Tenn. W. Div.) where the plaintiff there successfully defended against the motion to abstain with a response in opposition (*Phillips*, Dkt. Entry 18) similar to that filed by Defendants in the instant case.

In *Beal/Schaeffer*, this Court rejected the argument of the *Beal/Schaeffer* plaintiffs, in spite of the forceful argument that parallels almost exactly to the argument of Defendants in the instant case, with no allusion to *Younger*.  In *Beal/Schaeffer*, there was no state court proceeding then pending. This Court, plainly and simply, abstained in exercise of this Court's jurisdiction, in *Beal/Schaeffer,* for nothing other than <u>prudential</u> reasons.

Had this Court been bound to find *Younger* grounds to abstain in *Beal/Schaeffer*, this Court could not have abstained; there were no *Younger* grounds for this Court to abstain in *Beal/Schaeffer*.

The United States Supreme Court has used prudence and prudential grounds for withholding the exercise of its jurisdiction.  Repeatedly, the United States Supreme Court explains why the United States Supreme Court often denies petitions for certiorari by explaining the process.  A case might be presented seeking a petition for writ of certiorari where there are undeniable violations of constitutional rights, objectively presented, in circumstances where the violation has injured or may even cause the death of persons; yet, the United States Supreme Court denies certiorari on prudential grounds.

Sometimes, it is determined that the justices on the Supreme Court are so divided that granting the petition would produce so many variant opinions that the state of the law would be confused by granting certiorari.  Other times, the reason is because social circumstances that exist in the nation, that require that the United States Supreme Court, at the time, remain silent on the issue.  The list could go on for pages.  The point is that courts with the inherent authority to do so are expected to refrain from exercising jurisdiction where prudence dictates.

Thus, this Court is called on to consider all of the facts and circumstances and reflect on whether, in this case at this time under the unique circumstances presented here, commonsense, prudence and efficient use of all judicial resources dictate that the Court abstain.

In a turn-the-tables twist, Defendants have accused Plaintiff of multiplying the proceedings by the Abstention Motion. If there is anything that the Abstention Motion is doing, it is an attempt to avoid the multiplicity of the proceedings that will occur absent granting the Abstention Motion.

Plaintiff will attempt to put in context the critical facts and circumstances that require a prudential assessment in the instant case.

Defendants argue the lateness of the Abstention Motion as a basis for denying the motion and argue waiver on the part of Plaintiffs by Plaintiff filing the instant case in federal court. This all sounds good until it is considered that, until June 3, 2007, the facts and circumstances that require a prudential assessment did not exist. The June 3, 2007 date must be compared with the fact that, on July 6, 2007, the Abstention Motion was filed. And, in terms of sequence, the Abstention Motion (Dkt. Entry 93) predated the motion for summary judgment (Dkt. Entry 96).

On April 16, 2007, BioCore, Inc., the independently incorporated independent-contractor that is the dealer of Plaintiff, filed a mirror-image complaint against Defendants in chancery court in Shelby County (Dkt. Entry 107) (hereinafter "*BioCore Case*") alleging the exact same acts/omissions, seeking damage and/or equitable relief for injuries suffered by BioCore because of exactly the same conduct of exactly the same Defendants as is at issue in the instant case. The BioCore Case, from its inception, and today, has included a claim for relief under the Lanham Act (Dkt. Entry 107 p. 17).

On every day from April 16, 2007 up through June 3, 2007, Defendants, who are represented in the BioCore Case by the same counsel representing Defendants in the instant case, had an absolute right, under Title 28, *United States Code* §1441, to remove the BioCore Case to this Court. The grounds for removal were indefensible because this Court would have had original jurisdiction over the BioCore Case under both the federal question and diversity of citizenship doctrines. Frankly, it was expected that Defendants would remove the BioCore case to this Court.

Had the BioCore Case been removed to this Court, the Local Rules of this Court would have automatically assigned it to the judge presiding in the instant case. At that point, the judge assigned the BioCore Case and the instant case would have had complete control over both cases and could have such orders as prudence required to administer justice in both cases in a way that made judicial commonsense in the disposition of both cases.

Defendants had every right to forego their absolute right to remove the BioCore Case to this Court. This is a logistical and strategic decision over which Defendants (until June 3, 2007) had control. However, when Defendants allowed thirty (30) days to expire without removing the BioCore Case to this Court, Defendants made a strategic decision <u>with consequences</u>. Of importance here is the consequence that this Court, because of this strategic decision by Defendants, lost opportunity to

3

exercise control over the BioCore Case and, thereby, control the administration of justice in a way that makes prudent and commonsense.

Defendants made another unilateral decision that created theretofore non-existing prudential concerns. In March 2007 (seven months past the Scheduling Order date for timely amendment to the First Amended Complaint in the instant case), Defendants unilaterally chose to engage in conduct that opened Defendants to a new suit by Plaintiff, and Defendant, knowing of the allegations in the First Amended Complaint in the instant case, had to know that Plaintiff would be sure to sue for that conduct.

Plaintiff waited to sue for the March 2007 conduct of Defendants anticipating that Defendants would remove the BioCore Case to this Court, at which time, Plaintiff could present to this Court the actionable conduct of Defendants in March 2007 either as a new suit or as a possible amendment to the First Amended Complaint rather than a new suit. But, when Defendants made the deliberate choice not to remove the BioCore Case to this Court, the dynamics all changed.

For Plaintiff, it made no good sense, after Defendants chose not to remove the BioCore Case, to present the new actionable conduct either as a new suit or a proposed amendment to the First Amended Complaint in this Court.

Therefore, on July 6, 2007, Plaintiff, in chancery court, filed the new claims combined with claims already pled in the First Amended Complaint in addition to new and expanded claims alleging, with Rule 9(b)/ Rule 9.02 specificity frauds of a kind not alleged in the First Amended Complaint (Dkt. Entry 110) (hereinafter "**Plaintiff's Chancery Case**"). Subsequently, on July 24, 2007, Plaintiff amended Plaintiff's Chancery Case against Defendants (Dkt. Entry 110) to further clarify the expanded fraud claims and to delete from Chancery Case, Plaintiff's claim for relief under the Lanham Act.

The reasoning behind Plaintiff's decision to file Plaintiff's Chancery Case, rather than file a motion or new case in this Court, is apparent on reflection.

The instant case and the BioCore Case involve proof from exactly the same witness (e.g., Martin Harris, the owner of BioCore was deposed by Defendants in the instant case and Martin Harris' deposition, which is 231 pages in length, has been filed (Dkt. Entry 108) in the instant case for use in prosecuting and defending against Defendants' motion for summary judgment. Likewise, the deposition of Mark Patterson (Dkt, Entry 109), which is 224 pages in length, is being used in the instant case; Mark Patterson contracted with BioCore to interact with customers of BioCore to persuade the customers to purchase Medison ultrasound equipment. The list could go on. But, the point is that, on the present state on the record, both this Court and Chancellor Armstrong are going to be called on to

4

F:\Clients\Medison America\Pleadings\P's Reply to Memorandum in Opposition to P's Motion for Court to Abstain from Further Exercise of Jurisdiction.DOC

read and digest all of the overlapping proof, with each having to make the same determination about its probative significance.

Essentially, BioCore, for the most part, is the person interacting in the field with potential customers competing head-to-head with Defendants for the patronage of customers. Plaintiff is the exclusive marketer of Medison manufactured ultrasound equipment throughout the United States. When BioCore loses a sale, Plaintiff loses a sale to BioCore. Therefore, all that is occurring in the dynamics in the instant case, Plaintiff's Chancery Case and the BioCore Case involve a tumbling of the same domino. For example, Plaintiff's damages, in part, involve Plaintiff proving that BioCore lost sales and, therefore, Plaintiff lost concommittant sales to BioCore. If BioCore did not lose sales, the part of Plaintiff's damages linked to loss of sales cannot be established, i.e., Plaintiff only sold to BioCore what BioCore sold to end-users.

Because Plaintiff's reputation was being negatively impacted and Plaintiff has a national reputation, Plaintiff may have been damaged in a way not linked directly to loss sales by BioCore, but of major significance to proof of Plaintiff's damages are BioCore's lost sales.

Plaintiff has filed (Dkt. Entry 111) a motion to amend to delete allegations in the First Amended Complaint (Dkt. Entry 2). Because issues might be raised that might implicate Rule 41(a)(2) and Title 28 *United States Code* § 1367(c), a discussion is included that explains the implications for the administration of justice, if this Court does not abstain. That discussion is relevant to the prudential grounds for abstaining as well.

Respectfully Submitted,

**LARRY E. PARRISH, P.C.**


By: __/s Larry E. Parrish__
Larry E. Parrish, BPR#8464
The Crescent Center
6075 Poplar Avenue, Suite 420
Memphis, Tennessee  38119
(901) 767-8000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the **Plaintiff's Reply To Memorandum In Opposition To Plaintiff's Motion For Court To Abstain From Further Exercise Of Jurisdiction** has been forwarded by electronic means via the Court's electronic filing system to:

Jonathan P. Lakey
jlakey@pietrangelocook.com

5

F:\Clients\Medison America\Pleadings\P's Reply to Memorandum in Opposition to P's Motion for Court to Abstain from Further Exercise of Jurisdiction.DOC

on the 10th day of August 2007.

                                                    __s/ Larry E. Parrish__  
                                                    Larry E. Parrish, BPR#8464

6

F:\Clients\Medison America\Pleadings\P's Reply to Memorandum in Opposition to P's Motion for Court to Abstain from Further Exercise of Jurisdiction.DOC